## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| In re<br><br>ERIC M. CIAMPA<br><br>　　　　　　Debtor | Chapter 13<br>Case No. 16-10913-FJB |

### MEMORANDUM OF DECISION ON
### DEBTOR'S MOTION TO DETERMINE NONPRIORITY STATUS OF CLAIM

The debtor, Eric M. Ciampa ("Debtor"), seeks a determination that the unsecured claim of creditor Katarzyna Heath ("Creditor"), his former spouse, is not a domestic support obligation ("DSO") and therefore not entitled to the priority status of a DSO under 11 U.S.C. § 507(a)(1)(A).  Creditor argues that, in their divorce agreement, the Debtor agreed to pay the student loans of Creditor's daughter Michelle in the amount of $50,000 in lieu of alimony, making that obligation a DSO under 11 U.S.C. § 101(14A) (defining DSO for purposes of the Bankruptcy Code) and therefore entitled to first priority status.  The Debtor argues that the debt is not a DSO because the divorce agreement stated that, other than under the terms of the divorce agreement, "[the parties] agree that they will not at anytime or under any circumstances or under any statutory authority or case law of any jurisdiction, make any demands or claims against the other  . . . for alimony, [or] support maintenance[.]"  After a trial in which the Creditor and the Debtor testified, I now make the following findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, made applicable by Fed. R. Bank. P. 7052.

The parties stipulated to the following facts. The Debtor and the Creditor were married on June 4, 2000. No children were born to them.  Michelle is not the Debtor's biological daughter. During the marriage, a loan was taken out through the Federal Student Loan Program to pay the higher education costs for Michelle (the "Student Loan Obligation"). On or about March 19, 2010, the Creditor filed a

complaint for divorce against the Debtor, including a request for spousal support, and on April 25, 2010, the Creditor filed a motion for such support. On or about May 10, 2010, the parties entered a stipulation with respect to the request for support and the Bristol County Probate and Family Court ("the State Court") entered the stipulation as an Order of the Court. On or about November 15, 2012, the parties entered a divorce agreement. The State Court approved the agreement and entered a judgment of Divorce Nisi on November 15, 2012, which became absolute on February 14, 2013. Pursuant to Exhibit D to the divorce agreement, the Debtor agreed to continue making the monthly payments on the Student Loan Obligation until it was paid in full. On March 16, 2016, he filed this bankruptcy case.  Between April 29, 2016 and February 15, 2018, the Debtor filed a series of chapter 13 plans in which he identified the Student Loan Obligation as his obligation. The Creditor did not file a proof of claim in the bankruptcy case.  On February 15, 2018, this Court confirmed the Debtor's Fourth Amended Chapter 13 Plan.

Based on the evidence adduced at the trial, I also make the following findings.

On May 10, 2010, the parties entered a stipulation, entered as an order of the State Court, whereby the Debtor agreed to pay the Student Loan Obligation and to maintain life insurance to cover the Student Loan Obligation until paid in full.  At the time the divorce complaint was filed, the Creditor had no income and no medical insurance coverage, and she left the marital home to move in with her mother. As noted above, in the divorce agreement the parties agreed that, other than as stated in the agreement itself, all alimony and support obligations were to cease, and neither would ever seek to impose such obligations in the future.  Ex. 1, ¶ 3. In Exhibit D to the divorce agreement, the parties agreed that they together borrowed over $55,000 for Michelle's education.  They also agreed that the Debtor had been paying the Student Loan Obligation, that he would be required to pay that obligation, that he would obtain a life insurance policy sufficient to pay that obligation in the event of his death, and that in the event of a bankruptcy by the Debtor the Student Loan Obligation would be non-dischargeable.  At the trial the Debtor affirmed this commitment when he testified that "in lieu of

2

providing support . . . [he] agreed to continue making the payments on the student loan." Trans. p. 71, lines 18-20.  The Creditor also testified that it was her intention that the Debtor would pay off the Student Loan Obligation in lieu of alimony and support.  Trans. pp. 185, 199-200.  In each of four separate chapter 13 plans proposed by the Debtor, he listed the Student Loan Obligation as his obligation, indicated that his obligation to pay it was a debt he owed to creditor.  He also described the Student Loan Obligation as a DSO and indicated that he would pay it directly to the United States.  The fourth amended plan, which contained this characterization and treatment of the obligation, was confirmed by this Court.

The determination of whether an obligation to a former spouse constitutes a DSO is a matter of federal bankruptcy law, not of state law.  *Werthen v. Werthen (In re Werthen)*, 329 F.3d 272-73 (1st Cir. 2003). Under 11 U.S.C. § 101(14A), a DSO is a debt that (1) is owed to a former spouse (2) in the nature of alimony, maintenance or support, regardless of how the debt is designated, (3) by application of a separation agreement, divorce decree or court order, and (4)  that is not assigned to a nongovernmental agency.  The critical question is not how the state court characterized the debt, but rather whether the court and the parties intended the debt to be for the support or maintenance of the spouse.  How the award functioned in the divorce agreement does not necessarily reflect how it was intended by the parties to function, but its function may be evidence of intent. *Cowell v. Hale (In re Hale)*, 289 B.R. 788, 791 n. 4 (1st Cir. BAP 2003). Courts examine a wide range of factors in determining whether a debt is a DSO.  Among them is the "language used by the state court and whether the property award appears to 'assuage need' as discerned from the structure of the award and the financial circumstances of the recipient at the time of the agreement." *Smith v. Pritchett (In re Smith)*, 398 B.R. 715, 721 (1st Cir. BAP 2008).  While state law may provide an insight on the intent of the state court and the parties, it is not determinative of the issue.

Debtor argues that intent should be gleaned from the words of the divorce agreement and state law.  He argues that in the agreement Creditor waived her right to alimony and support.  He also argues that under state law the court could not have intended the Student Loan Obligation payments to be for support because such an award is limited to 70 months on the facts of this case, and the Student Loan Obligation payments could extend beyond that time. MASS. GEN. LAWS ch. 208 § 49(b)(2). He also argues that under state law any alimony obligations could not continue past Creditor's remarriage, which it is undisputed occurred in 2013. *Id*. at § 49(d).

The Bankruptcy Appellate Panel in this circuit declined to adopt a multi-factor test, such as those employed in other circuits; rather it applied a totality of the circumstances test in determining this fact-intensive question. *Smith*, 398 B.R. at 722. I agree with that approach. Applying such a standard in this case leads to the conclusion that the order that the Debtor pay the Creditor's debt for Michelle's student loans was a DSO. First, the divorce agreement is clear that any waiver of a right to alimony by the parties excludes the allocations made in that agreement itself, including the requirement that Debtor pay the Student Loan Obligation. Hence, the words of the divorce agreement unambiguously support the Creditor's argument. Second, Exhibit D to the agreement plainly assigns to Debtor the obligation to pay the Student Loan Obligation until paid in full. Third, the parties testified that each of them understood that the Debtor's obligation to pay the Obligation was in lieu of a support order; especially given the Creditor's circumstances at the time of the divorce, with no employment, the Debtor's assumption of full responsibility for the Student Loan Obligation, including the monthly payments thereon over a period of years, served a support purpose and was negotiated to do so. Fourth, the Debtor's argument that his obligation to pay the Student Loan Obligation was a property division and not support is unavailing because under Massachusetts divorce law the court is free to award property "[i]n addition to or in lieu of a judgment to pay alimony." MASS. GEN. LAWS ch. 208, § 34. Moreover, under the alimony statutes cited by the Debtor the state courts are granted broad discretion

to extend alimony and support beyond the time limits of section 49 of chapter 208 upon a finding of the court. The divorce agreement adopted by the State Court did just that. It specifically excepted from the waiver of alimony and support the allocations made in the agreement, including the requirement that the Debtor pay the Student Loan Obligation. *See also* Divorce Agreement, ¶ 6 (alimony and support provisions to survive any judgment). Nor is such an award surprising where the Debtor testified that he always treated Michelle like she was his biological daughter and that "he still does." Indeed, consistent with Massachusetts statutes, these cases do not fit easily into tidy categories, which is the reason that a flexible approach is required.

Finally, the Debtor has characterized his obligation to the Creditor as a DSO in each of four chapter 13 plans, the last of which was confirmed. The Court relied on that characterization and the treatment of the DSO in confirming the plan, as did the Creditor in choosing not to object to it. The Debtor is now judicially estopped from disavowing that position. *Guay v. Burack*, 677 F.3d 10, 17 (1st Cir. 2012) (judicial estoppel precludes a party from advancing a position where (i) that position is directly inconsistent with one he advanced earlier and (ii) he succeeded in persuading the court to accept that prior position); *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993) ("[H]aving obtained judicial [bankruptcy] relief on the representation that no claims existed, [plaintiff] cannot now resurrect them and obtain relief on the opposite basis."); *see In re Stephen Angelo*, 480 B.R. 70, 93-97 (Bankr. D. Mass. 2012).

Based on the foregoing, the Court will by separate order deny the motion to determine that Debtor's obligation under the divorce agreement and judgment to pay the Student Loan Obligation is not a DSO. As the order shall further declare, the obligation is a DSO and as such entitled to § 507(a)(1)(A) priority.

Date: April 24, 2020

_____
Frank J. Bailey
United States Bankruptcy Judge

5